IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| NINE POINT ENERGY HOLDINGS, INC., *et al.*, | : | Case No. 21-10570 (MFW) |
| | : | |
| Debtors. | : | |
| | : | |
| CALIBER NORTH DAKOTA, LLC, CALIBER | : | |
| MEASUREMENT SERVICES, LLC, and | : | |
| CALIBER MIDSTREAM FRESH WATER | : | |
| PARTNERS, LLC, | : | |
| | : | |
| Appellants, | : | Civ. No. 21-972-RGA |
| v. | : | Civ. No. 21-973-RGA |
| | : | Civ. No. 21-974-RGA |
| NINE POINT ENERGY HOLDINGS, INC., | : | Civ. No. 21-975-RGA |
| NINE POINT ENERGY, LLC, and AB | : | Civ. No. 21-976-RGA |
| PRIVATE INVESTORS LLC, as Agent for the | : | |
| Debtors' Prepetition and Postpetition Lenders, | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM**

Pending before the Court is Caliber's[1] second *Emergency Motion for Stay Pending Appeal* (D.I. 54) ("Second Emergency Motion"), pursuant to which Caliber seeks a stay of my Order (D.I. 52) affirming five separate orders of the Bankruptcy Court, including the Bankruptcy Court's June 29, 2021 *Order (I) Approving the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (B.D.I. 528)[2] ("Sale Order").

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Opinion.

[2] The docket of the Chapter 11 cases, captioned *In re Nine Point Energy Holdings, Inc., et al.*, No. 21-10570 (MFW), is cited herein as "B.D.I. __." The docket of the adversary proceeding, captioned *Nine Point Energy Holdings, Inc. et al. v. Caliber Measurement Servs. LLC*, Adv. No.

Also before the Court is Debtors' cross-motion (D.I. 56) ("Cross-Motion") seeking an order clarifying that the stay provided for under Bankruptcy Rule 8025(a) was modified by the order I granted on July 6, 2021 (D.I. 11, or the "Stay Order"). Alternatively, if I determine that the stay is in effect, Debtors seek an order shortening it by immediately terminating such stay, or alternatively, materially shortening it so Debtors can close the sale approved by the Sale Order by August 9, 2021.

## I.   BACKGROUND

### A.   The Sale Order

This dispute arises in the chapter 11 cases of Nine Point Energy Holdings, Inc., *et al* (collectively, "NPE" or the "Debtors"). On June 29, 2021 the Bankruptcy Court entered the Sale Order approving the sale of substantially all the Debtors' assets to a Buyer. Caliber moved in the Bankruptcy Court for stay of the Sale Order pending appeal in this Court. The Bankruptcy Court granted a modification of the usual 14-day stay to eight days, through July 7, 2021, noting that "the current declarations, [and] the entire course of this case, in which Caliber has participated in every matter, has made it clear to the Court that a swift exit or resolution of the case is necessary to preserve the business. The fact that new-money DIP was needed at all makes that clear." (6/29/21 Hr'g Tr. at 34:7-13).

### B.   The First Emergency Motion and the Expedited Appeals

On July 1, 2021, Caliber filed its first emergency motion for stay pending appeal in this Court (D.I. 3) ("First Emergency Motion"). Caliber also sought expedited briefing and review by this Court of the merits of its appeal of the Sale Order. (*See id.* at 6). Although Caliber stated in its First Emergency Motion that it intended to move to consolidate and expedite all of its appeals,

---

21-50243 (MFW) (Bankr. D. Del.), is cited herein as "Adv. D.I. __." All citations to the docket are to Civ. No. 21-973-RGA unless otherwise indicated.

it did neither. (*See* D.I. 3 at 2 n.2).

On July 6, 2021, I entered the Stay Order. The Stay Order defined the Bankruptcy Court's prior stay of the Sale Order, through July 7, 2021 as the "Current Stay," and ordered, "The Court intends to issue its decision on the merits of the appeal no later than Friday, July 30, 2021, and the Current Stay of the Sale Order is extended through that date." (D.I. 11). I granted this relief to facilitate "expedited review of the merits of the appeal of the Sale Order." (*Id.*).

The merits of the Sale Order appeal were fully briefed by the parties. Notably, Caliber devoted substantially all of its Opening Brief (D.I. 15) to the merits of four other appeals from different Bankruptcy Court orders,[3] and Appellees had no prudent choice but to respond. As Caliber later argued, the propriety of the Sale Order—in particular, the argument that it failed to adequately protect Caliber's liens and other interests—rested on the propriety of the Bankruptcy Court's prior rulings denying Caliber's liens and other interests, and this Court should therefore consider all of the appeals under the merger rule, pursuant to which a final order "draws in question all prior non-final orders and rulings which produced the [final order]." (*See* D.I. 40 at 22). Notwithstanding that these other appeals were not included in the Court's grant of expedited consideration, I reviewed the merits of those appeals as well. On July 30, 2021, I heard oral argument (D.I. 47) and issued a lengthy Opinion and Order addressing all of the issues raised in Caliber's appeals and affirming the Bankruptcy Court's Orders. (D.I. 51, 52).

---

[3] Caliber's other appeals include: (1) the Bankruptcy Court's *Order Granting Plaintiffs' First Motion for Partial Summary Judgment* (Adv. D.I. 82) and *Order Granting Plaintiffs' Second Motion for Partial Summary Judgment* (Adv. D.I. 83) (together, the "SJ Orders") (Civ. No. 21-975-RGA and Civ. No. 21-976-RGA); (2) the Bankruptcy Court's bench ruling issued on June 28, 2021 which is further supported by the Bankruptcy Court's written opinion issued July 7, 2021 and memorialized in the Order dated July 19, 2021 (B.D.I. 581) ("Claim Objection Order") (Civ. No. 21-974-RGA); and (3) the Bankruptcy Court's bench ruling issued on June 29, 2021 ("Rejection Order") authorizing (but not requiring) the Debtors to reject certain contracts with Caliber, which was memorialized by the *Order Authorizing Debtors to Reject Certain Executory Contracts* (B.D.I. 540) ("Rejection Order") (Civ. No. 21-972-RGA).

3

### C.    The Second Emergency Motion

On August 3, 2021, Caliber filed its Second Emergency Motion.   By the Second Emergency, Caliber (i) asserts that Bankruptcy Rule 8025(a) extended the stay of the Sale Order until August 13, and (ii) seeks an additional stay of the Sale Order for 30 days pursuant to Bankruptcy Rule 8025(b).

## II.    APPLICABLE STANDARD

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at \*2-3 (Bankr. D. Del. Mar. 27, 2001).   When presented with a motion to stay, courts consider "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015).   The first two factors are "the most critical," and a strong likelihood of success is "the more important piece of the stay analysis . . . ." *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019) (citations omitted).   The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) and (b) [it] will suffer irreparable harm absent a stay?   If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach.   However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (internal quotations and citations omitted).

## III.    ANALYSIS

### A.    Debtors' Cross-Motion

Debtors argue that the stay of the Sale Order terminated in accordance with the terms of the Stay Order on July 30, 2021 when I issued the Opinion and Order affirming the Sale Order.

4

That night, however, Caliber sent a letter to Debtors and Lenders asserting that Bankruptcy Rule 8025 extended the stay of the Sale Order until August 13— notwithstanding that the Stay Order provided the stay would dissolve on July 30. (D.I. 11 at ¶ 4). Before I can determine whether to grant the relief sought in the Second Emergency Motion, I must determine the arguments raised in the Cross-Motion.

Bankruptcy Rule 8025(a) provides, "Unless the district court … orders otherwise, its judgment is stayed for 14 days after entry." Fed. R. Bankr. P. 8025(a). Bankruptcy Rule 8025(c) provides, "If the district court … enters a judgment affirming an order … of the bankruptcy court, a stay of the district court's … judgment automatically stays the bankruptcy court's order … *for the duration of the appellate stay*." FED. R. BANKR. P. 8025(c) (emphasis added). In my view, Debtors correctly argue that the district court has already "ordered otherwise" in its Stay Order that its Order affirming the Sale Order would not be stayed for an additional 14 days after entry.

Debtors' Cross-Motion requests that I enter an order clarifying that the stay provided for under Bankruptcy Rule 8025(a) is not in effect and, if it is, shortening it by immediately terminating such stay; or alternatively, materially shortening it so the Debtors can close the sale approved by the Sale Order by August 9, 2021. To avoid further confusion, I hold that, to the extent that any 14-day stay under Bankruptcy Rule 8025 remains in place following the Court's issuance of the Stay Order and Order, the Court hereby "orders otherwise" that any such stay shall be modified, and the Sale Order shall be stayed only through and including August 8, 2021.

### B.    Caliber's Second Emergency Motion

Caliber has filed its second Emergency Motion, requesting that I grant a second stay pending appeal, for an additional 30 days, pursuant to Bankruptcy Rule 8025(b), which provides, "On a party's motion and notice to all other parties to the appeal, the district court … may stay its judgment pending an appeal to the court of appeals." Fed R. Bankr. P. 8025(b). Caliber intimates

that it is seeking only a modest 30-day stay.  (D.I. 54 at 1, 3, 11).  But Caliber also asserts, citing

to Bankruptcy Rule 8025(b)(3), that, if granted, its requested stay will protect Caliber until the

conclusion of its anticipated appeal to the Third Circuit.  (*Id.* at 2, 11).

### 1.    Likelihood of Success on the Merits

In the Third Circuit, "a sufficient degree of success for a strong showing [of success on the

merits] exists if there is a reasonable chance, or probability, of winning.  A "reasonable chance"

does not require a "greater than 50%" chance of prevailing on appeal. *Revel AC*, 802 F.3d at 571.

Thus, while it is not enough that the chance of success on the merits be better than negligible, the

likelihood of winning on appeal need not be more likely than not." *Revel AC*, 802 F.3d at 568-69

(internal citations and quotation marks omitted).  In its Second Stay Motion, Caliber argues it has

a strong likelihood of convincing the Third Circuit that the Bankruptcy Court erred when it held:

(a) the Dedications would have no practical effect after rejection of the MSAs; (b) Caliber's $150

million claim is not secured by a Statutory Well Lien; and (c) the Dedications are not covenants

running with the land.  (D.I. 54 at 16-21).  Both this Court and the Bankruptcy Court have held

that these arguments lack merit.

First, Caliber does not have a reasonable chance of succeeding on the merits of its argument

that the Dedications survive rejection.  In its summary judgment opinion, the Bankruptcy Court

ruled that the Dedications would not survive rejection:

> The Court found the Mission Products case distinguishable from this case.  In Mission
> Products, the contract at issue was a trademark license agreement.  The Supreme Court
> held that the rejection of the contract did not eliminate the license. *Id.* at 1662.  Instead, it
> held that the counterparty had the right to continue to use that license after rejection,
> notwithstanding the fact that the debtor was relieved of its obligation to perform. *Id.*
>
> In contrast, in this case under the express terms of the MSA, Caliber has no right to use the
> Interests and Dedications except in its performance of the contracts.

*In re Nine Point Energy Holdings Inc.*, 2021 Bankr. LEXIS 1486, at *18 (Bankr. D. Del. June 1,

2021).  I agreed:

> The Bankruptcy Court correctly distinguished Mission Product from this case; unlike the trademark licensee who could use the debtor's intellectual property without the involvement of the debtor, "in this case under the express terms of the MSA, Caliber has no right to use the Interests and Dedications except in its performance of the contracts," … which can only occur after the Debtors perform by extracting fluids and sending them to Caliber for processing and transportation. … As the Debtors correctly point out, Caliber's reading would allow any contractual counterparty to inoculate itself from the effects of rejection by including an exclusivity provision in its contract.

(Opinion at 14-15).

Second, Caliber does not have a reasonable chance of succeeding on the merits of its argument that a statutory well lien securing future performance revenues under the RCA. A Statutory Well Lien, as Caliber concedes, does not attach to services or materials that have not been provided. (*See* Opinion at 22-23). The Bankruptcy Court identified several reasons for holding that Caliber's $150 million claim was a claim for future services that Caliber has not provided, and not a claim for reimbursement of Caliber's construction costs. *In re Nine Point Energy Holdings, Inc.*, 2021 Bankr. LEXIS 1797 (Bankr. D. Del. July 7, 2021). First, "none of the agreements between the parties contain a provision requiring the Debtors to pay Caliber for any of its specific construction costs." *Id.* at 15. Second, "the Revenue Commitment Agreement was executed by the parties in September 2013, at which time Caliber had not constructed all of the pipelines." *Id.* Third, "Caliber retained title to the pipelines it constructed [and] use[d] the pipelines for the transport of product for other oil and gas producers." *Id.* at *15-16. Fourth, "[i]f the amount due under the Revenue Commitment Agreement was only for the construction of the pipeline, that would mean that Caliber agreed to perform all the other services free of charge," which "is not a reasonable interpretation of the agreements." *Id.* at *16.

I agreed with the Bankruptcy Court's conclusion. (*See* Opinion at 23). "Neither the RCA nor the MSAs required NPE to pay any amount to reimburse Caliber for the construction of its pipeline system. Rather, those agreements required NPE to pay Caliber for Caliber's services of moving fluids through Caliber's pipelines." (*Id.* at 23-24). I found, "[The] Bankruptcy Court

carefully analyzed Caliber's argument on this point and correctly held, 'Caliber's argument was inconsistent with the actual language, and not a reasonable interpretation of the parties' agreements.'" (*Id.* at 26 (quoting *Nine Point*, 2021 Bankr. LEXIS 1797 at *17)).

Finally Caliber does not have a reasonable chance of succeeding on the merits of its argument that the Dedication are covenants running with the land. The Bankruptcy Court correctly determined that the Dedications do not run with the land:

> [T]he MSA did not grant any interest in a Real Property Estate under North Dakota law for several reasons. First, no interest in the Mineral Rights held by the Debtors was granted to Caliber because the MSA confirmed that the Debtors at all times retained title to the Mineral Rights.

> ... Further, the Surface Rights granted to Caliber under the MSA are not covenants that run with the land under North Dakota law, because the grant of an easement or other non-exclusive interest in the surface of land is not an estate in real property or "appurtenant" to an estate in real property. ... The MSA did not grant Caliber the exclusive right to use of the Surface Rights; instead, the Debtors granted Caliber only a non-exclusive right to access the property for the purpose of constructing and maintaining the pipeline and related facilities necessary for Caliber to perform its obligations under the MSA.

> ... [T]he Interests and Dedications are not covenants that run with the land because they do not directly touch on or concern the real property interests of the Debtors, namely the mineral interests. ... [T]he covenants provided no direct benefit to the mineral interests, but only personal benefits to the Debtors by providing transportation of the Debtors' personal property (the severed oil and gas) and related services for a fee.

*Nine Point*, 2021 Bankr. LEXIS 1486 at *10-12. I likewise ruled that Caliber had failed to establish either element for a covenant to run with the land:

> Even if the earlier Dedications could be found to be conveyed in the later-provided easements, the easements still would not satisfy the "contained in a grant of an estate in real estate property" element. Under North Dakota law, an estate in real property must provide for the exclusive use of property. Easements are not estates in real property because they provide for the nonexclusive use of property.

> ... A covenant providing for the provision of gathering, processing, and transportation of severed hydrocarbons in exchange for a fee, as in the MSAs, does not benefit (or 'touch and concern') the mineral estate because it does not affect the use or enjoyment of the hydrocarbons in place, or the mineral estate. Instead, such covenants merely benefit the severed hydrocarbons, which are personal property of the producer.

(Opinion at 17, 20). For the reasons set forth in the Opinion, Caliber does not have a reasonable

chance, or probability, of succeeding on its appeal.

### 2.      Irreparable Harm in Absence of a Further Stay

Harm is irreparable if it "cannot be prevented or fully rectified by a successful appeal." *Revel AC*, 802 F.3d at 568 (citation and internal quotations omitted).   The Bankruptcy Code provides (with an exception for bad faith conduct), "The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease . . . unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m) (emphasis added).   Caliber argues that, if the Court denies a stay pending appeal and the sale closes before a determination of these appeals, § 363(m) may preclude the Court of Appeals from unwinding the sale. (D.I. 54 at 12).   If that were to happen, Caliber argues, the sale would wipe out its lien and other vested interests without a full opportunity for appellate review, which "would have devastating effect on the Caliber's finances and operations." (*Id.*)

A purely economic injury generally is not irreparable harm. *Revel AC*, 802 F.3d at 572. The Third Circuit recognizes an exception to that rule when "potential economic loss is so great as to threaten the existence of the movant's business." *Id.*   Caliber relies on the same evidence to establish irreparable harm that it did when filing the First Emergency Motion.   Here, as there, Caliber relies on a declaration asserting that Caliber's loss of appellate rights "would ... further strain Caliber's finances." (D.I. 4 at ¶ 20).   But Caliber's declarant did not state that the loss of appellate rights would threaten Caliber's business; he merely speculates that it "may potentially threaten the viability of its continuing business." *Id.*   A "potential threat" does not meet the exception's requirement to actually threaten a movant's business.

### 3.      Injury to Other Parties in Interest

As supported by their declarations (D.I. 7, 58), even a short stay of the Sale Order—much less the indefinite one that Caliber seeks to procure—will materially harm Debtors, their

9

employees and their creditors (which include a number of entities that are not the Lenders) by jeopardizing the going concern sale of Debtors' assets. (D.I. 56 at 15-17). As the Bankruptcy Court observed over a month ago, "a swift exit or resolution of the case is necessary to preserve the business" (6/29/2021 Tr. at 34:11–12), and (ii) "all the parties affected by the debtors' business need to have some certainty" with respect to the relief granted in the Sale Order (*id.* at 34:16–17). The Sale Order was entered by the Bankruptcy Court on June 29, 2021 and Debtors and Lenders anticipated closing on the proposed sale on or shortly after July 8, 2021. (D.I. 4 at 7). Debtors' financing facility was also set to mature on July 8, 2021 ("DIP Maturity Date"), requiring the Debtors to pay their lenders $88.7 million on that date. Debtors did not have sufficient funds to make that payment absent closing of the sale. (D.I. 7 at ¶ 6). Notwithstanding Debtors' obligations to the Lenders, I granted Caliber a lengthy stay of the Sale Order—through July 30, 2021—in order to consider Caliber's appeal on an expedited basis, as it requested. Thus, Debtors were already forced to extend their financing once, and the one-month delay in the closing of the sale has already been a hardship to Debtors.

Debtors were able to secure a further extension of the DIP Maturity Date and outside closing date for the sale until August 9, 2021. (D.I. 58 ("Second Spencer Declaration") ¶ 4). As set forth in Debtors' declarations, however, this extension came with significant strings. The extension requires Debtors to use their best efforts to close the sale by August 9, 2021, and, subject to Bankruptcy Court approval, pay Lenders over $5 million of interest and any cash on hand going forward in excess of $17 million dollars as of any bi-weekly testing date. (*Id.*) This new cash sweep will make Debtors and their operations extremely vulnerable to risks relating to the timing of cash flows and may hamper their ability to close the sale. (*Id.*) A stay of the Sale Order past August 8 threatens to destroy Debtors' hard-fought contractual rights to compel the Buyer to complete its purchase of Debtors' assets. If the sale does not close by August 9, Buyer can

10

terminate the APA with or without cause. (*See* APA § 11.1.4). Failure to close will place Debtors

at risk of liquidation (since a robust sale process netted only the Buyer as a bidder) and will harm

unsecured creditors, who stand to benefit from Buyer's assumption of $41 million for their claims

if the sale closes on its current terms. (*See* D.I. 7 at ¶¶ 8-9).

Compounding Debtors' harm, Lenders will have the right to terminate Debtors' use of cash

collateral or impose additional economic concessions unless Debtors pay them $88.7 million

(which they will not have absent the sale closing) and gain their agreement to extend deadlines.

(DIP Order ¶¶ 29-32 & Ex. A at 13-14; D.I. 7 ¶ 6; D.I. 58 ¶ 6). Without continued use of cash

collateral, Debtors will have to immediately halt operations, which would have devastating

consequences on Debtors' employees, vendors and interest holders in Debtors' leaseholds. (*Id.*)

Indeed, if the sale were to be stayed beyond August 9, Debtors assert that they would likely need

to obtain additional postpetition financing to ensure sufficient liquidity to run their businesses,

which cannot be assured. (*Id.*) Lenders have already begun exacting economic concessions from

the Debtors by requiring Debtors to provide such concessions in exchange for necessary extensions

of the DIP Maturity Date and outside sale closing date. (*Id.*)

Caliber speculates that Buyer will voluntarily close later and that Lenders will voluntarily

forbear from terminating Debtors' continued use of cash collateral. (*See* D.I. 54 at 16 (arguing

"there is no reason to expect … that the Lenders will walk away from the sale, and from their

investment, due to a short delay in closing"). Thus, Caliber argues, Debtors' claim of potential

harm is as implausible and unsupported. I disagree. As Debtors correctly point out, such sheer

speculation does not protect Debtors or their creditors from the consequences of the loss of the

Debtors' rights. Debtors were able to secure some brief hard-fought extensions from the Lenders,

but in the face of another stay, Debtors would, once again, become subject to the whims of the

Lenders who can refuse further extensions for any reason whatsoever and continue to ratchet up

11

the economic pressure on Debtors, and who will be more inclined to do so with the passage of time.

The Court agrees that any further stay beyond the August 9 closing date poses a risk of substantial harm to the Debtors, their employees, creditors, and other stakeholders which far outweighs any risk to Caliber.

### D.     Public Interest

"In the bankruptcy context, there is a general public policy weighing in favor of affording finality to bankruptcy judgments." *In re W.R. Grace & Co.*, 475 B.R. 34, 208 (D. Del. 2012).

> Public policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies.  This policy is furthered by the policy favoring finality of bankruptcy judgments.  When investors and other third parties can rely on [] confirmed plans of reorganization and other bankruptcy judgments, they have the footing and confidence they need to pursue investments and business arrangements with the reorganized debtor, all of which foster the debtor's successful reorganization.

*In re Genesis Health Ventures, Inc.*, 280 B.R. 339, 346-47 (D. Del. 2002).  The only arguments Caliber has offered to the contrary are that there is a public interest in (a) the correct application of the law when a litigant has a strong likelihood of success on the merits and (b) preserving appellate rights.  As Debtors correctly point out, if that were enough, the public interest factor would be superfluous as the former duplicates the likelihood of success factor and the latter is true for every appeal from a sale order.

## IV.     CONCLUSION

I granted Caliber a stay pending appeal once, and Caliber has failed to carry its burden of establishing that a second stay pending appeal is warranted.  Caliber is unlikely to succeed on the merits of its arguments, and the requested 30-day additional stay poses the risk of irreparable harm to Debtors and their estates.

A separate order follows.